UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

————————————————

In re:

AUSTIN F. WILLIAMS and CARRIE L.
WILLIAMS,

           Debtors.

_____/

Case No. DL 18-00179
Chapter 13
Hon. Scott W. Dales

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

Austin and Carrie Williams (the "Debtors") filed for bankruptcy protection under chapter 13 on January 18, 2018.  They submitted a plan and amended it twice (ECF Nos. 20 and 23) before the court confirmed it on March 23, 2018 (ECF No. 24).

After chapter 13 trustee Barbara P. Foley (the "Trustee") filed a motion to dismiss (ECF No. 43), the Debtors responded by filing the Debtors' Motion to Approve First Post-Confirmation Plan Amendment (ECF No. 47, the "First Post-Confirmation Amendment").[1]  The First Post-Confirmation Amendment drew the Trustee's objection (the "Objection," ECF No. 48), and the court set the matter for hearing.  After an adjournment intended to promote settlement, the court heard oral argument on September 10, 2020.  During the argument, the Debtors and the Trustee declined the court's invitation to brief the issue or offer evidence, agreeing instead that the court

---

[1] Technically, the Debtors filed an earlier "first" post-confirmation amendment that was resolved (ECF No. 34). For clarity, the First Post-Confirmation Amendment at issue in this opinion is ECF No. 47, not ECF No. 34. Although the Debtors did not file a separate amendment document for their current proposal, any procedural error is harmless given the court's decision on the merits. *See* Fed. R. Bankr. P. 3015(h) ("A request to modify a plan under §1229 or §1329 of the Code shall identify the proponent and shall be filed together with the proposed modification. . . .") and Fed. R. Bankr. P. 9005 (court must ignore harmless errors).

should make its decision based solely on the pleadings already filed, the arguments presented, and its own independent research.

At issue is whether the Debtors should be allowed to decrease their monthly plan payments from $1,035.00 to $751.32 so that they may each contribute to their respective 401(k) retirement plans. Their counsel explained that although they were making retirement contributions before filing this case, they ceased doing so, around the petition date, in reliance on their counsel's reading of *Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012).

The *Seafort* panel endorsed the view, albeit in *dicta*, that the Bankruptcy Code does not permit chapter 13 debtors to make "post-petition voluntary retirement contributions in any amount regardless of whether the debtor was making pre-petition retirement contributions." *Seafort*, 669 F.3d at 667 and 673 n. 7 (citing *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010)). According to the influential *Seafort dicta*, such contributions would always constitute "disposable income."

Recently, however, another Sixth Circuit panel held that a chapter 13 debtor who makes 401(k) retirement plan contributions during the six months leading up to the bankruptcy filing "may deduct her monthly 401(k) contributions from her disposable income under § 1325(b)(2)." *Davis v. Helbling (In re Davis)*, 960 F.3d. 346 (6th Cir. 2020). *Davis*, in other words, rejected the *Seafort dicta* that reportedly prompted the Debtors in this case to discontinue their contributions. Reading *Davis* as giving the green light to post-petition retirement savings, the Debtors filed their First Post-Confirmation Amendment to make this possible.

The Trustee objects because she believes that nothing in the *Davis* case abrogates *Seafort* and the Debtors cannot start making post-petition retirement contributions at the expense of their creditors consistent with their obligation to commit their "disposable income" to the plan.

Strictly speaking, *Seafort* held that "post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is 'projected disposable income' that must be turned over to the trustee for distribution to unsecured creditors pursuant to § 1325(b)(1)(B) and may not be used to fund voluntary 401(k) plans." *Seafort*, 669 F.3d at 663. The result obviously favored the trustee and unsecured creditors. *Davis*, on the other hand, reached a pro-debtor result on a related but distinct issue, finding, after a careful statutory analysis, that where the debtor's employer withheld 401(k) contributions each month from wages for at least six months prior to her bankruptcy, the debtor "may deduct her monthly 401(k) contributions from her disposable income under § 1325(b)(2)." Both *Seafort* and *Davis*, however, involved appellate review of the original plan confirmation decision under § 1325, not *modification* under § 1329, as here.

The differences between the procedural posture in those cases and this one, however, is important because the weight of persuasive authority holds that the disposable income requirement of § 1325(b) does not apply to plan modifications under § 1329. *See* 11 U.S.C. § 1329(b)(1) (making § 1325(a) applicable to modifications, but omitting reference to § 1325(b)); *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 781 (9th Cir. BAP 2005) ("Simply put, the plain language of § 1329(b) does not mandate satisfaction of the disposable income test of 1325(b)(1)(B) with respect to modified plans"); *In re Moore*, 602 B.R. 40 (Bankr. E.D. Tenn. 2019) (the "projected disposable income" test is not a requirement for modification of chapter 13 plan); *In re McCully*, 398 B.R. 590 (Bankr. N.D. Ohio 2008) (§ 1325(b) not incorporated into § 1329); *In re Hill*, 386 B.R. 670 (Bankr. S.D. Ohio 2008) (same). Because the Debtors are seeking to modify their confirmed plan, rather than confirm their plan in the first instance, the court will address the

proposed modification as it has addressed other modifications, essentially by balancing the binding effect of a confirmed plan against the need to address changed financial circumstances -- as Congress itself contemplated when it enacted § 1329.

As the proponent of the modification, the Debtors bear the burden of persuading the court to depart from the binding effect of the plan that would otherwise apply to them under § 1327. As the Sixth Circuit Bankruptcy Appellate Panel has opined, § 1327 precludes modification of a confirmed plan under § 1329 to address issues that were or could have been decided at the time the plan was originally confirmed. *Storey v. Pees (In re Storey)*, 392 B.R. 266 (6th Cir. BAP 2008).

At confirmation over two years ago, the Debtors might have sought relief from the *Seafort dicta* (as the debtors in *Davis* successfully did), but they did not. Offering nothing more than the opinion in *Davis*, they fail to persuade the court that modification is permissible, notwithstanding § 1327. Whatever change *Davis* may have brought to the legal landscape in our Circuit, it is not a change in the Debtors' financial circumstances warranting relief from the binding effect of the plan in this case.

Moreover, the *Seafort dicta*, borne of the notion that debtors who seek relief from their debts should not pay themselves before their creditors, remains persuasive. Indeed, although the Trustee couched her opposition to the post-confirmation amendment in the language of disposable income, she is really arguing the equities, in addition to the preclusive effect of the confirmation order under § 1327. In effect, approving the amendment under the unexceptional circumstances presented here would be tantamount to blessing an insolvent's revocable, self-settled trust to the detriment of creditors, an outcome anathema to public policy and equitable principles. *Fornell v. Fornell Equip., Inc.*, 213 N.W.2d 172, 176 (Mich. 1973) ("Public policy does not permit a man to place his own assets beyond the reach of his creditors."); *In re Kramer*, 249 B.R. 147, 151 (Bankr.

E.D. Mich. 2000) (describing revocable self-settled trust (and IRA) as "generally a machination contrary to a fair and equitable distribution of assets"); *see generally Bank of Marin v. England*, 385 U.S. 99, 103 (1966) ("There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.").

When exercising its discretion to approve a plan modification, or not, the court finds guideposts in both *Seafort* and *Davis,* with the former teaching that debtors ought, in fairness, pay their creditors before themselves, and the latter suggesting that courts must undertake "a more searching good-faith analysis" of retirement contributions to prevent misuse of the bankruptcy process at the expense of creditors. Finding no reason to relieve the Debtors of the binding effect of the plan they proposed and the court confirmed, and no reason to require their creditors to bear the costs of the Debtors' retirement plans, the court, in its discretion, declines to approve the First Post-Confirmation Plan Amendment.

NOW, THEREFORE, IT IS HEREBY ORDERED that the First Post-Confirmation Plan Amendment is NOT APPROVED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon the Debtors, Michelle Marrs, Esq., Barbara P. Foley, Esq., all entities on the mailing matrix or requesting notice of these proceedings, and the United States Trustee.

[END OF ORDER]

**IT IS SO ORDERED.**

**Dated September 24, 2020**



Scott W. Dales
United States Bankruptcy Judge